UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ALAN McQUEEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17 CV155 ACL |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Alan McQueen filed this medical malpractice action against Defendant United States of America, Department of Veterans Affairs, under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq*. Presently pending before the Court is Defendant's Motion for Summary Judgment. (Doc. 42.) McQueen, who proceeds *pro se*,[1] has filed a Response (Doc. 50) and Defendant has filed a Reply (Doc. 51).

### **Background[2]**

McQueen presented to the Urgent Care clinic at John J. Pershing Veteran Administration Medical Center in Poplar Bluff, Missouri ("VA Hospital") on November 24, 2014, for treatment after being stung by a wasp. At the VA Hospital, Nurse Kelly Stark inserted an intravenous ("IV") needle into McQueen's left hand for the purpose of administering medication intravenously. During this process, McQueen sustained an IV infiltration in his left hand.

---

[1] McQueen was represented by counsel when he filed this action. On November 29, 2017, counsel filed a Motion to Withdraw, citing an irresolvable conflict. Counsel's motion was granted, and McQueen elected to proceed *pro se*.

[2] Unless otherwise noted, the Court's recitation of the facts is taken from Defendant's Statement of Uncontroverted Material Facts and supporting documentation. (Doc. 43.)

McQueen returned to the VA Hospital the following day with complaints of pain and swelling associated with the IV infiltration.

On July 28, 2016, McQueen underwent surgery for a mass on the dorsal side of his left hand. The operative report from that surgery described the removal of a metacarpal boss.[3]

McQueen subsequently developed trigger finger in his left small finger.

McQueen underwent an Independent Medical Examination in connection with this action in October 2018,[4] which revealed stiffness and reduced range of motion of the left hand.

In his Complaint, McQueen argues that Defendant, through its agents or employees, was negligent as follows:

(a) Nurse Stark administered a medication not ordered by the physician;

(b) Nurse Stark administered a medication through the wrong route;

(c) Nurse Stark improperly inserted an IV into McQueen's left hand resulting in an infiltration or subcutaneous injection of medication that was meant to be intravenous;

(d) Nurse Stark failed to recognize that the vein was not appropriately cannulated before injection of the medication;

(e) Nurse Stark failed to recognize the infiltration or subcutaneous injection of medication in a timely manner and provide proper treatment to prevent further complication;

(f) Nurse Stark failed to document findings of an infiltrated intravenous catheter;

---

[3] A metacarpal bossing is a small immovable mass of bone that forms on the back of the wrist between the carpal bones (the eight small bones that make up a person's wrist) and the metacarpal bones. (Doc. 43-4 at p. 2.)

[4] Defendant's statement of facts and supporting documentation indicate the examination took place on "October 5, 2019." (Doc. 43 at ¶ 57; Doc. 43-4 at ¶ 3.) The Court assumes the examination in fact took place on October 5, *2018*.

(g) Nurse Stark failed to recognize the infiltration or subcutaneous injection of medication resulting in progression of the injury.

(Doc. 1 at p. 4.) McQueen alleges that, as a direct and proximate result of Defendant's negligence, he sustained serious and permanent injuries including pain, swelling, nerve damage, a soft tissue mass, and loss of range of motion in his left hand. *Id.* at p. 5. He further claims that he has suffered a loss of the enjoyment of life, past and future lost wages, and lost earning capacity. *Id.* McQueen testified in his deposition that, in addition to the injuries cited in his Complaint related to his hand, he also suffered a heart attack and a stroke, which he attributes to the IV infiltration. (Doc. 43-1 at 61-62.)

Defendant filed a Motion for Summary Judgment contending that McQueen cannot establish his *prima facie* case of medical malpractice. Defendant contends that the testimony of McQueen's own expert witness, Dr. James Crichlow, D.O., as well as Defendant's expert witness, Dr. Louis Brunworth, support that McQueen's alleged injuries were not related to the IV needle stick.

In his Response, McQueen argues that he can establish that the IV needle stick caused the injuries to his left hand within a reasonable degree of medical certainty. He contends that "Defendant's own medical expert," Dr. Gilbert R. Teague, M.D., found during a compensation and pension initial examination that Nurse Stark attempted the IV placement where the vein was not successfully cannulated and did not recognize that fact. (Doc. 50 at p. 2.) McQueen further states that Dr. Teague expressed the opinion that McQueen's injury was directly related to Nurse Stark's lack of training. *Id.* McQueen attached Dr. Teague's records as an exhibit. (Doc. 50 at p. 4-11.)

Defendant, in its Reply, first argues that its Statement of Uncontroverted Material Facts is deemed admitted because McQueen failed to deny them in compliance with the Court's Local Rules. Defendant next contends that McQueen is barred from relying on Dr. Teague as his expert because he failed to disclose him as such in a response to one of Defendant's interrogatories. Defendant further argues that Dr. Teague's report does not create a disputed material fact because it does not comport with the "to a reasonable degree of medical certainty" standard mandated by Missouri law for expert opinions.

## I. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine issue of material fact is not the "mere existence of some alleged factual dispute between the parties." *State Auto. Ins. Co. v. Lawrence,* 358 F.3d 982, 985 (8th Cir. 2004). "Instead, the dispute must be outcome determinative under prevailing law." *Mosley v. City of Northwoods,* 415 F.3d 908, 910-11 (8th Cir. 2005) (internal quotations omitted). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in his favor to allow a jury to return a verdict for him. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If 'opposing parties tell two different stories,' the court must

4

review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the nonmoving party – as long as those facts are not 'so blatantly contradicted by the record . . . that no reasonable jury could believe' them." *Reed v. City of St. Charles, Mo.*, 561 F.3d 788 (8th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights,* 2 F.3d 276, 279 (8th Cir. 1993).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the nonmoving party and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.,* 210 F.3d 845, 847 (8th Cir. 2000). The court is required, however, to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

**II.    Discussion**

As an initial matter, the Court notes that McQueen did not respond to Defendant's Statement of Material Facts (Doc. 43), as required under Federal Rule of Civil Procedure ("FRCP") 56 and Local Rule 4.01(E). McQueen's *pro se* status does not excuse him from responding to Defendant's Motion "with specific factual support for his claims to avoid summary judgment," or from complying with local rules. *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001). With his failure to respond, McQueen is deemed to have admitted all of the facts in Defendant's statement of uncontroverted facts. *Turner v. Shinseki*, No. 4:08-CV-1910 CAS,

5

2010 WL 2555114, at *2 (E.D. Mo. Jun. 22, 2010) (citing *Deichmann v. Boeing Co.*, 36 F. Supp.2d 1166, 1168 (E.D. Mo. 1999)).

Summary judgment is not granted in favor of Defendant as a result of McQueen's failure to properly respond to Defendant's statement of material facts. Instead, the Court deems the facts set forth by Defendant as true. *Reasonover v. St. Louis Cty., Mo.*, 447 F.3d 569, 579 (8th Cir. 2006). Defendant must still establish that it is entitled to judgment as a matter of law. *See id.*

Defendant argues that it is entitled to summary judgment because McQueen cannot establish that the IV needle stick caused any of the injuries about which he complains to a reasonable degree of medical certainty. Defendant contends that McQueen cannot, therefore, establish his *prima facie* case.

In a case filed pursuant to the FTCA, the court applies the law of the state in which the acts complained of occurred. *Goodman v. United States,* 2 F.3d 291, 292-93 (8th Cir. 1993) (citing 28 U.S.C. § 1346(b)). In this case, McQueen's claims arise from the treatment he received at the VA Hospital in Poplar Bluff, Missouri. Consequently, Missouri law applies.

McQueen has alleged a claim for medical malpractice. Under Missouri law, in order to establish a claim for negligence, a plaintiff must prove: "(1) the existence of a duty on the part of the defendant to protect the plaintiff from injury, (2) a failure of the defendant to perform that duty, and (3) an injury proximately caused by the defendant's failure." *Blevens v. Holcomb,* 469 F.3d 692, 694 (8th Cir. 2006) (citing *Krause v. U.S. Truck Co.,* 787 S.W.2d 708, 710 (Mo. 1990) (en banc)).

In this case, Defendant only challenges McQueen's ability to establish, with medical expert testimony, the element of causation. "In a medical malpractice case, where proof of

6

causation requires a certain degree of expertise, the plaintiff must present expert testimony to establish causation." *Sundermeyer v. SSM Reg'l Health Servs.*, 271 S.W.3d 552, 554 (Mo. banc 2008). This is because in cases where "there is a sophisticated injury, requiring surgical intervention or other highly scientific technique for diagnosis, proof of causation is not within a lay person's understanding." *Brickey v. Concerned Care of Midwest, Inc.*, 988 S.W.2d 592, 596 (Mo. Ct. App. 1999). Hence, expert medical testimony is necessary to prove a causal link between a health care provider's negligence and the plaintiff's injuries "'except where the want of skill or lack of care is so apparent as to require only common knowledge and experience to understand and judge it.'" *Super v. White*, 18 S.W.3d 511, 516 (Mo. App. 2000) (citation omitted).

Moreover, "[w]hen the plaintiff relies on expert testimony to provide evidence as to causation when there are two or more possible causes, that testimony must be given to a reasonable degree of medical certainty." *Super v. Wright*, 62 S.W.3d 511, 525 (Mo. Ct. App. 2000). Indeed, if the plaintiff's injuries may have resulted from either of two causes, one for which the defendant would be liable and the other for which the defendant would not be liable, the plaintiff must show with a reasonable degree of medical certainty that the cause for which the defendant would be liable produced the injury. *Mueller v. Bauer*, 54 S.W.3d 652, 656 (Mo. App. 2001). Otherwise, "any verdict would be based on speculation and surmise." *Steele v. Woods*, 327 S.W.2d 187, 195 (Mo. 1959).

Defendant contends that both expert witnesses concluded to a reasonable degree of medical certainty that McQueen's injuries were not related to the IV needle stick. Defendant first cites to the deposition testimony of McQueen's treating physician, Dr. Critchlow, in which he agreed with Defendant's counsel's statement that "[a]ll of Mr. McQueen's complaints that

we've discussed could have been caused by something other than an IV stick." (Doc. 43-3 at p. 86.) Defendant also notes that Dr. Critchlow testified that McQueen's work as a mechanic "could have caused many of the injuries about which Plaintiff complains." (Doc. 44 at p. 6.)

Defendant next discusses the testimony of its expert, Dr. Brunworth. Dr. Brunworth reviewed McQueen's medical records and performed an independent medical examination on McQueen. (Doc. 43-4 at p. 2.) In a sworn Declaration, Dr. Brunworth concluded as follows:

> To a reasonable degree of medical certainty, Mr. McQueen sustained an IV infiltration in his left hand in 2014 when the nurse at the VA was starting an IV. I do not believe, however, with a reasonable degree of medical certainty that the majority of the causes of his current symptoms are due to the IV needle stick or the IV infiltrate.

*Id.* at p. 4. Dr. Brunworth further stated that, to a reasonable degree of medical certainty: the "bump on the dorsal side of Mr. McQueen's left hand for which he had surgery in 2016 was more likely to have been caused by work as a mechanic, arthritis, genetic predisposition and not from an IV needle stick in 2014;" and McQueen's trigger finger surgery was "not related to an IV needle stick on the dorsal side of his left hand." *Id.*

The Court finds that Defendant has not met its burden to establish that it is entitled to judgment as a matter of law on McQueen's Complaint. Contrary to Defendant's claim, the expert witnesses did not find that all of McQueen's claimed injuries were unrelated to Nurse Stark's attempted IV placement. Dr. Brunworth testified that he did not believe that "the *majority of the causes*" of McQueen's "*current symptoms*" were caused by the IV needle stick. Dr. Brunworth does not delineate McQueen's "current symptoms." Dr. Critchlow's cited testimony is similarly vague, in that it refers generally to McQueen's "complaints." It is true that, in other portions of their testimony, both experts indicated that they could not find to a reasonable degree of medical certainty that the soft tissue mass or metacarpal bossing for which McQueen underwent surgery was caused by the IV needle stick. (Doc. 43-3 at p. 69-70; Doc.

43-4 at p. 4.) Dr. Brunworth additionally testified that McQueen's trigger finger surgery was not related to the IV incident. (Doc. 43-4 at p. 4.)

In his Complaint, however, McQueen claimed the following physical injuries: "pain, swelling, nerve damage, a soft tissue mass, and loss of range of motion in his left hand." (Doc. 1 at p. 5.) Neither expert expressed the opinion to a reasonable degree of medical certainty that *none of* McQueen's claimed injuries were caused by the attempted IV placement. In fact, Dr. Brunworth's testimony supports the following facts: McQueen sustained an IV infiltration in his left hand on November 24, 2014, when Nurse Stark attempted to start an IV; McQueen immediately experienced bruising and swelling on the dorsal side of his left hand; McQueen returned to the VA Hospital the following day and was treated for symptoms of the IV infiltration in his left hand; and a year later, McQueen continued to have persistent swelling on the dorsal side of his left hand.

Defendant, the moving party with respect to this motion, must affirmatively show the absence of evidence in the record. *Celotex Corp.,* 106 S.Ct. at 2557 ("[A]s the Court confirms, a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record.") (J. Brennan, dissenting). The Court finds that Defendant has not met its initial burden to establish that it is entitled to judgment as a matter of law as to McQueen's medical malpractice claim. Instead, the testimony of Defendant's own expert supports that at least *some* of McQueen's alleged injuries could be caused by the IV infiltration.

Accordingly, Defendant's Motion for Summary Judgment will be denied.

**III.    Issues Relevant to Trial**

In its Motion for Summary Judgment, Defendant raises several issues that require discussion due to their relevance to the trial.  First, McQueen must produce expert testimony to establish causation when "there is a sophisticated injury, requiring surgical intervention," and proof of causation "is not within a lay person's understanding."  *Brickey*, 988 S.W.2d at 596.  McQueen's alleged injuries of "pain and swelling" resulting from the IV infiltration may be within a lay person's understanding; however, his other alleged injuries are not, and will require expert testimony.

With regard to Dr. Teague's opinions, the Court finds that McQueen may present this evidence at trial, despite his failure to disclose Dr. Teague as an expert in his response to Defendant's interrogatories.  Defendant admits that Dr. Teague's records were part of the medical records Defendant provided to McQueen during discovery.  (Doc. 51 at p. 3 n. 2.)  Defendant relies upon *James v. Mecom, Ltd.*, 1:04 CV 102 CDP, 2006 WL 2990342, at *3 (E.D. Mo. Oct. 18, 2006), in seeking to preclude consideration of Dr. Teague's opinions.  In *James*, the Court held that James' failure to disclose a treating physician as an expert as required by the rules and by two different court orders, was "inexcusable, and Mecom has been prejudiced because it did not have an opportunity to discover the opinion or to rebut it."  *Id.*  Contrary to *James*, Defendant cannot claim prejudice resulting from McQueen's failure to name Dr. Teague as an expert in his response to interrogatories, as Defendant provided Dr. Teague's records to McQueen.

Finally, the Court notes that Dr. Teague's opinions may be of little evidentiary value to McQueen.  In a "Disability Benefits Questionnaire" completed to determine McQueen's eligibility for VA benefits, Dr. Teague found, in relevant part, that it was "at least as likely as

10

not"[5] that the "claimed disability of residuals of IV infiltration was caused by the VA treatment at issue." (Doc. 50 at p. 4.) As previously stated, expert testimony regarding causation "must be given to a reasonable degree of medical certainty" when there are two or more possible causes. *Wright*, 62 S.W.3d at 525. McQueen cannot rely on an opinion based upon a standard of "at least as likely as not" to establish causation.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 42) is **denied.**

*/s/ Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of April, 2019.

---

[5] The VA's Compensation & Pension Clinician Guide advises clinicians to express their opinions as follows: "is due to" (100% sure), "more likely than not" (greater than 50% probability), "at least as likely as not" (50% probability), "not at least as likely as not" (less than 50% probability), or "is not due to" (0% probability) an in-service event. U.S. Dep't of Veterans Affairs, C&P Clinician Guide 1.16 (2002), *available at* https://www.benefits.va.gov/WARMS/topic-compensation-pension.asp (last visited April 11, 2019).